

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00304-CR

---

**STEPHANIE LYNN TUELE, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the Criminal District Court 3
Tarrant County, Texas[1]
Trial Court No. 1795288, Honorable Bob Brotherton, Sitting by Assignment

---

July 29, 2026

## MEMORANDUM OPINION

**Before DOSS and YARBROUGH and PRATT, JJ.**

Appellant, Stephanie Lynn Tuele, appeals from the judgment of conviction entered on a jury's finding that she possessed methamphetamine in an amount of four grams or more but less than 200 grams, including adulterants or dilutants, a second-degree felony.[2] The jury assessed punishment at ten years of confinement but recommended community

---

[1] This cause was originally filed in the Second Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

[2] *See* TEX. HEALTH & SAFETY CODE § 481.115(d).

supervision, and the trial court suspended the sentence and placed Appellant on community supervision for ten years. Appellant raises two issues. She first argues the trial court erred in denying her motion to suppress the traffic stop and the ensuing search of her vehicle. She next contends the evidence is legally insufficient to prove that she intentionally or knowingly possessed the methamphetamine. We affirm.

## BACKGROUND

The North Richland Hills Police Department received an anonymous tip that drugs were being sold from a ground-floor room of a Studio 6 motel, a location Sergeant Chad Hobson knew from earlier narcotics activity. That afternoon, Hobson set up undercover surveillance of the motel.

Hobson watched a car driven by Appellant pull into a fire lane and stop, with a male passenger in the front seat. He ran the temporary tag, which returned to Appellant and her husband, and he confirmed Appellant's identity from her driver's license photograph. The license check also revealed two active misdemeanor warrants for her arrest. A few minutes later, a second man came out of the motel and entered the back seat. Appellant drove across the lot, backed into a space, and the three occupants sat at a picnic table talking and smoking for roughly fifteen minutes before returning to the car and leaving.

Hobson followed. As Appellant drove away, Hobson observed Appellant commit two traffic violations: she failed to signal a right turn for the required distance before the intersection, and she failed to stop at the proper place at the stop sign. *See* TEX. TRANSP.

2

CODE §§ 545.104(b), 544.010(c). Because Hobson was in an unmarked car and out of uniform, he radioed Officer Tyler Johnson to perform a stop of Appellant's vehicle.

Johnson stopped Appellant, obtained her identification, and confirmed the two outstanding warrants through dispatch. He arrested Appellant on the warrants and secured her in his patrol car. Other officers removed the two passengers, and a pat-down of one produced a broken methamphetamine pipe.

Officer Matthew Boyd then walked his canine, Luka, around the vehicle for an open-air sniff. Luka alerted at the driver's door. The ensuing search uncovered a bag on the driver's-side floorboard containing a white crystalline substance, a liquid, and marijuana. In the center console, officers found prescription bottles of a muscle relaxant bearing names other than those of the three occupants. All three were arrested.

At trial, the State offered much of the same testimony, along with the officers' body-camera video. The video showed Appellant asking for a supervisor as soon as she was stopped, refusing at first to exit the vehicle, and continuing to protest loudly from the patrol car. Laboratory analysis confirmed that both the crystalline substance and the liquid were methamphetamine, with a combined net weight of approximately seven grams. That analysis also identified the pills from the center console as cyclobenzaprine, a prescription muscle relaxant that is not a controlled substance.[3]

---

[3] Appellant was not charged with any crime for possession of this drug.

3

Motion to Suppress

In her first issue, Appellant challenges the denial of her motion to suppress. She argues that the anonymous tip could not supply reasonable suspicion, that her conduct at the motel added nothing, and that the traffic violations were both uncorroborated by video and disputed by her testimony. The controlling question, however, is narrower than Appellant presents. A vehicle stop supported by an officer's observation of a traffic violation does not depend on the tip that first drew the officer's attention.

We review a ruling on a motion to suppress under a bifurcated standard. We afford almost total deference to the trial court's determination of historical facts and to its resolution of mixed questions that turn on credibility and demeanor, and we review de novo the questions of law and the application of law to facts that do not turn on credibility. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019); *McCurley v. State*, 653 S.W.3d 477, 484 (Tex. App.—Fort Worth 2022, pet. ref'd). When, as here, the trial court makes no explicit findings, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Police officers may lawfully stop a vehicle when they have reasonable suspicion to believe that a traffic violation has occurred. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). Reasonable suspicion exists when the officer can point to specific, articulable facts that, together with rational inferences, suggest that the person stopped

is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The inquiry is objective, so the officer's subjective intent does not control. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

Applied here, the anonymous tip about alleged drug activity served only to place Hobson at the motel; it was not the basis for the stop. We need not decide whether the tip and the surveillance would have justified a detention on their own, because the observed traffic violations independently supplied reasonable suspicion for a stop. *See Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). Hobson testified that he personally watched Appellant fail to signal her turn for the required distance and fail to stop at the proper place. That Officer Johnson, rather than Hobson, executed the stop makes no difference, because an officer may rely on information relayed by a fellow officer under the collective-knowledge doctrine. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). Nor does the absence of a video recording undermine the ruling, for the trial court was free to credit Hobson's account. *Ross*, 32 S.W.3d at 855.

Once the stop was underway, Johnson confirmed through dispatch that Appellant had two outstanding warrants and arrested her on them. An outstanding warrant furnishes authority to arrest. *See* TEX. CODE CRIM. PROC. art. 15.01. The canine sniff that followed did not offend the Fourth Amendment. Ordinarily, an officer may not prolong a completed traffic stop to conduct a dog sniff absent independent reasonable suspicion. *Rodriguez v. United States*, 575 U.S. 348, 354–57 (2015). The rule, however, is different once the person has been lawfully arrested. *Medina v. State*, 565 S.W.3d 868, 876 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Because Appellant was already under lawful arrest and secured in the patrol car when Luka sniffed the vehicle, the sniff added no

5

unreasonable delay to her detention. *See id.; United States v. Fonville*, 652 F. App'x 383, 387 (6th Cir. 2016) ("There is no such time limit on detention for a dog sniff following a lawful arrest."). Luka's alert supplied probable cause to search the vehicle. *Matthews v. State*, 431 S.W.3d 596, 603–04 (Tex. Crim. App. 2014).

Appellant's reliance on the 2011 decision by the Court of Criminal Appeals in *Martinez v. State*, 348 S.W.3d 919 (Tex. Crim. App. 2011), does not change the result. In *Martinez*, the officer stopped a suspect based on an anonymous tip alone, having observed no violation of any law. *Id.* at 922. The Court held that the uncorroborated tip could not support reasonable suspicion, and it suppressed the evidence found after the stop. *Id.* at 924–26. This case is different in this respect. Here, the officer did not rely on the tip to justify the stop; he signaled the stop after he observed Appellant break two traffic laws. That firsthand observation is precisely what *Martinez* lacked.

Appellant's own testimony that she committed no violation and had no valid warrants created, at most, a credibility dispute, which the trial court resolved against her. We defer to that resolution. *McCurley*, 653 S.W.3d at 484. Viewing the record in the light most favorable to the ruling, the stop, the arrest, and the search were lawful. We overrule Appellant's first issue.

Sufficiency of the Evidence

In her second issue, Appellant contends the evidence is legally insufficient to prove that she knowingly or intentionally possessed the methamphetamine recovered from the vehicle. We disagree.

We review the sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Viewing all the evidence in the light most favorable to the verdict, we ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Id.*; *Parker v. State*, 727 S.W.3d 38, 51 (Tex. Crim. App. 2025).  We do not sit as a thirteenth juror, nor do we substitute our judgment for the jury's on the weight and credibility of the evidence.  *Id.* at 51.  The jury may draw reasonable inferences using common sense and ordinary experience, and it may accept or reject any part of a witness's testimony.  *Id.*; *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  We consider all the evidence admitted at trial.  *Parker*, 727 S.W.3d at 51.

To establish possession, the State must prove that the accused exercised care, custody, control, or management over the substance and knew it was contraband.  TEX. PENAL CODE § 1.07(a)(39); *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016).  When the accused does not have exclusive possession of the place where the drugs are found, the State must offer additional, independent facts that affirmatively link the accused to the contraband.  *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006).  The purpose of the rule is to protect the innocent bystander, so the links must show that the accused's connection to the drugs was more than fortuitous.  *Id*. at 161.

When contraband is not in the exclusive possession of the defendant, courts have recognized a non-exclusive list of factors that may prove a defendant intentionally or knowingly possessed the contraband.  These include:

> (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed

7

other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the defendant was found with a large amount of cash, and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414; *Evans*, 202 S.W.3d at 162. What matters is not the number of factors present, but the logical force of the evidence taken as a whole. *Evans*, 202 S.W.3d at 162.

Applied here, the record supplies several links connecting Appellant to the methamphetamine. Appellant owned the vehicle and was driving it. The bag holding the drugs sat on the driver's-side floorboard, within her immediate reach. By her own account, she was holding the bag at the passenger's request, which is itself an admission of care and custody. Her conduct after the stop, asking at once for a supervisor, refusing to exit, disputing warrants the officers had already confirmed, and continuing to protest from the patrol car, permitted the jury to infer a consciousness of guilt. Officers also recovered other contraband, marijuana and prescription pills, from the vehicle.

To be sure, some recognized factors are absent here. The drugs were not in plain view, and no evidence showed that Appellant was under the influence, made furtive gestures, or attempted to flee. The absence of some evidence, however, does not diminish the force of that which is present, because the controlling measure is the logical force of the evidence as a whole. *Harper v. State*, No. 02-17-00257-CR, 2018 Tex. App. LEXIS 4848, at *4 (Tex. App.—Fort Worth June 28, 2018, no pet.) (mem. op. do not

8

publish) (holding that "the absence of facts and circumstances is not evidence of innocence to be weighed against evidence connecting [Appellant] to the contraband."). We ask, instead, whether sufficient evidence connecting Appellant to the methamphetamine permitted the jury to find that Appellant knowingly possessed it. *Id.* at *5. Here, the evidence was more than sufficient for the jury to conclude beyond a reasonable doubt that Appellant possessed the methamphetamine. *Id.*

We overrule Appellant's second issue.

## CONCLUSION

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

Lawrence M. Doss
Justice

Do not publish.